BARRY J. PORTMAN
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant SERRANO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00212 WHA |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | Honorable William H. Alsup |
| JOSE SERRANO, | ) | October 30, 2007 |
| | ) | 2:00 p.m. |
| Defendant. | ) | |
| | ) | |

1

**TABLE OF CONTENTS**

2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5
     I.      22 - 27 YEAR SENTENCE WOULD LIKELY BE UNCONSTITUTIONAL . . 1

6
     II.     22 - 27 YEAR SENTENCE UNWARRANTED UNDER ADVISORY
             GUIDELINES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7
     III.    SENTENCING FACTS HERE REQUIRE CLEAR AND CONVINCING
             EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

i

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3    *Bentley v. Cox*, 508 F. Supp. 870 (E.D.Va. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

4    *Taylor v. Lewis*, 460 F.3d 1093 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

5    *United States v. Lopez*, 477 F.3d 1110 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

6    *Davila v. Yates*, 2006 WL 1867635 (N.D. Cal. July 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . .   2, 7

7    *Duran v. Castro*, 227 F. Supp. 2d 1121 (E.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 7, 8

8    *Ewing  v. California*, 538 U.S. 11 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

9    *Harmelin v. Michigan*, 501 U.S. 957 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

10    *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

11    *Kimbrough v. United  States*, 127 S. Ct. 2933 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

12    *Ramirez v. Castro*, 365 F.3d 755 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

13    *Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6

14    *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

15    *Solem v. Helm*, 463 U.S. 277 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

16    *Terrebonne v. Blackburn*, 624 F.2d 1363 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6

17    *Turner v. United States,* 396 U.S. 398 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

18    *United States v. Jacqueline Bishop,* CR 06-00288 WHA . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

19    *United States v. Booker*, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 9, 10

20    *United States v. Brown*, 985 F.2d 478 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

21    *United States v. Contreras*, 446 F.2d 940 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

22    *United States v. De Leon*, 641 F.2d 330 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

23    *United States v. Echols*, 477 F.2d 37 (8th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

24    *United States v. Edwards*, 602 F.2d 458 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

25    *United States v. Fernandez*, 436 F. Supp. 2d 983 (E.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . .   12

26    *United States v. Franklin*, 728 F.2d 994 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

ii

1  *United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2  *United States v. Hill*, 589 F.2d 1344 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3  *United States v. Hopper*, 177 F.3d 824 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4  *United States v. Hunt*, 129 F.3d 739 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5  *United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

6  *United States v. Koua Thao*, 712 F.2d 369 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7  *United States v. Love*, 599 F.2d 107 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8  *United States v. Mezas de Jesus*, 217 F.3d 638 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 16

9  *United States v. Muckenthaler*, 584 F.2d 240 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10  *United States v. Nielsen*, 427 F. Supp. 2d 872 (N.D. Iowa 2006) . . . . . . . . . . . . . . . . . . . . . . 12

11  *United States v. Owens*, 344 F. Supp. 1355 (E.D.Wis. 1972), *aff'd,* 475 F.2d 759 (5th Cir.

12    1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13  *United States v. Person*, 377 F. Supp. 2d 308 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

14  *United States v. Pike*, 473 F.3d 1053 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15  *United States v. Powell*, 564 F.2d 256 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16  *United States  v. Ramirez-Rodriguez*, 552 F.2d 883 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . 4

17  *United States v. Reyes*, 8 F.3d 1379 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

18  *United States v. Senior*, 935 F.2d 149 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19  *United States v. Shumate*, 329 F.3d 1026 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

20  *United States v. Skipper*, 74 F.3d 608 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21  *United States v. Smith*, 595 F.2d 1176 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22  *United States v. Washburn*, 2007 WL 1663526 (9th Cir. June 5, 2007) . . . . . . . . . . . . . . 11, 15

23  **FEDERAL STATUTES**

24  18 U.S.C. § 3551(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25  18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

26  18 U.S.C. § 3582(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

Fed. R. App. P. 32.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

U.S.S.G. § 4B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 11

**STATE STATUTES**

Cal. H & S Code § 11351.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

**INTRODUCTION**

Defendant Jose Serrano, convicted in this case of possession with intent to distribute three grams of crack cocaine, qualifies for a career offender guideline enhancement under U.S.S.G. § 4B1.1 with the bare minimum of two qualifying prior felony convictions, one for assault when he was 18 years old and the second for possession with intent to distribute four grams of powder cocaine when he was 21 years old.  A sentence within the resulting guideline range of 262 to 327 months–that is, approximately 22 to 27 years–is not required pursuant to *United States v. Booker,* 543 U.S. 220 (2005), and under the circumstances of this case is in fact both unwarranted and likely unconstitutional.  For these reasons, the Court should instead sentence Mr. Serrano under the natural guidelines for the quantity of crack cocaine involved in this case.

**ARGUMENT**

**I.    22 - 27 YEAR SENTENCE WOULD LIKELY BE UNCONSTITUTIONAL**

The application of the career offender guideline to Mr. Serrano in this case would likely violate the Eighth Amendment's proscription against cruel and unusual punishment and the Fifth Amendment's preclusion of double jeopardy.  Here, Mr. Serrano was convicted of possessing with intent to distribute merely three grams of cocaine base.  Yet, this extraordinarily small amount of drugs results in a guideline range under U.S.S.G. § 4B1.1 of approximately 22 to 27 years because Mr. Serrano has the minimum two qualifying prior felony convictions, one for assault when he was 18 years old and the second for possession with intent to distribute four grams of powder cocaine when he was 21 years old.  PSR ¶¶ 28, 29.[1]  Under these circumstances, a sentence under the career offender guideline range would be grossly disproportionate to the offense of conviction in violation of the Eighth Amendment and cannot under the Double Jeopardy Clause be justified simply as a recidivist sentence.

---

[1] Mr. Serrano also has a non-qualifying prior felony conviction for felon firearm possession, which is not a crime of violence, from when he was 22 years old, and a misdemeanor conviction for accessory from when he was 17 years old.  PSR ¶¶ 27, 30; *see also* U.S.S.G. § 4B1.2 (defining terms used in § 4B1.1).

1    As an initial matter, it is important to note that Mr. Serrano is not claiming that either the

2    U.S. Sentencing Guidelines in general, or the career offender guideline in particular, is

3    unconstitutional on its face.  Rather, Mr. Serrano's argument is that *as applied in his particular*

4    *case* a sentence within the applicable guideline range would be unconstitutionally

5    disproportionate.  This distinction is well established.  *See, e.g., Ramirez v. Castro,* 365 F.3d

6    755, 763-64 (2004) (vacating petitioner's 25-years-to-life sentence under California's otherwise

7    valid "Three Strikes" law for his third shoplifting offense as grossly disproportionate in violation

8    of the Eighth Amendment); *see also Terrebonne v. Blackburn,* 624 F.2d 1363, 1365-66 (5th Cir.

9    1980) (vacating petitioner's life sentence imposed for possession of 22 packets of heroin and

10   remanding for the district court to determine whether the facially valid sentencing "statute's

11   application to his offense violates the eighth amendment's prohibition against cruel and unusual

12   punishment because the statute's imposition of life imprisonment for his offense is

13   disproportionate to that crime"); *Hart v. Coiner,* 483 F.2d 136, 139 (4th Cir. 1973) (vacating a

14   life sentence imposed under otherwise valid recidivist sentencing statute as cruel and unusual

15   punishment in violation of the Eighth Amendment after explaining that "a concededly valid

16   statute may be applied *in a particular case* in such a way as to violate various constitutional

17   provisions"); *cf. Reyes v. Brown,* 399 F.3d 964, 967-70 (9th Cir. 2005) (vacating California

18   "Three Strikes" sentence of 26 years to life for perjury under the Eighth Amendment and

19   remanding for determination of whether prior convictions, including  armed robbery, warranted

20   such an "extreme" sentence).

21   Thus, even under a facially valid recidivist sentence statute, a "criminal sentence that is

22   significantly disproportionate to the crime for which the defendant was convicted violates the

23   Eighth Amendment's proscription against cruel and unusual punishment."  *Davila v. Yates,* 2006

24   WL 1867635 (N.D. Cal. July 5, 2006) at *3 (citing *Solem v. Helm,* 463 U.S. 277, 303 (1983)

25   (holding that sentence of life imprisonment without possibility of parole for seventh nonviolent

26   felony violates Eighth Amendment)).  Along these lines, the Supreme Court recently clarified:

- 2 -

1    "The Eighth Amendment does not require strict proportionality between crime and sentence.

2    Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Ewing*

3    *v. California,* 538 U.S. 11, 23 (2003) (citation and internal quotation marks omitted).  Moreover,

4    "[a]lthough the focus [of this review] should be on seriousness of the principal offense, it is well

5    established that recidivism is an appropriate consideration in sentencing." *Duran v. Castro,* 227

6    F.Supp.2d 1121, 1129-30 (E.D. Cal. 2002) (granting habeas petition and vacating Three Strikes

7    sentence of 25 years to life for possession of 1.55 grams of heroin with two prior felony

8    convictions for kidnaping).  However, the "repetitive criminal rationale" for recidivist sentencing

9    schemes is not "simply a wild card that renders any penalty constitutional, however its terms and

10   however minor the principal offense." *Id.* at 1130.  Rather, "given the strictures of the Double

11   Jeopardy Clause, recidivism may be taken into consideration in the sentencing decision only to

12   the extent that it serves to aggravate the principal offense." *Id.*

13          Specifically, the Double Jeopardy Clause requires that, "[r]egardless of the relationship

14   between the principal offense and prior convictions, those priors can only serve to enhance the

15   punishment for the principal offense to the degree that such offense is susceptible to aggravation.

16   Put differently, some minor offenses will never warrant severe punishment even at their most

17   aggravated." *Id.* (citing *Rummel,* 445 U.S. at 274 n.11).  "Thus, when punishment greatly

18   exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is

19   actually being punished again for his prior offenses." *Id.*  Along these lines, the *Duran* court held

20   that, under this Double Jeopardy limitation, the petitioner's "prior kidnaping convictions cannot

21   serve to aggravate his possession of 1.55 grams of heroin." *Id.* at 1131.  Moreover, the *Duran*

22   court explained, "even if petitioner's current offense were aggravated by his prior convictions,

23   under the analysis in *Monge* [*v. California,* 524 U.S. 721 (1998)] petitioner's prior convictions

24   do not destroy the inference of gross disproportionality." *Id.*[2]

25   _____

26          [2]  The Supreme Court in *Monge* reviewed the California "recidivist enhancement at issue
     to determine whether, as applied, it fell within a 'constitutionally permissible' range such that it

1    Likewise, here, the prospective sentence under the career offender guideline for Mr.

2    Serrano of 22 to 27 years for possessing only three grams of crack cocaine with intent to

3    distribute raises an inference of gross disproportionality that is not destroyed by his prior

4    convictions, particularly since in this case there was no direct evidence of sales.  Courts have

5    upheld a finding of intent to distribute based solely on the possession of large quantities of

6    narcotics, on the order of at least hundreds of grams.  *See, e.g., United States v. Franklin,* 728

7    F.2d 994, 998 (8th Cir. 1984) (citing *United States v. Koua Thao,* 712 F.2d 369, 371 (8th Cir.

8    1983) (154.74 grams of opium); *United States v. De Leon,* 641 F.2d 330, 335 (5th Cir. 1981)

9    (294 grams of cocaine); *United States v. Grayson,* 625 F.2d 66, 67 (5th Cir. 1980) (413.1 grams

10   of 74% pure cocaine); *United States v. Love,* 599 F.2d 107, 109 (5th Cir. 1979) (26 pounds of

11   marijuana); *United States v. Edwards,* 602 F.2d 458, 470 (1st Cir. 1979) (200 grams of heroin);

12   *United States v. Smith,* 595 F.2d 1176, 1181 (9th Cir. 1979) (360 grams of heroin); *United States*

13   *v. Hill,* 589 F.2d 1344, 1350 (8th Cir. 1979) (625,000 dosage units of a diet pill); *United States v.*

14   *Muckenthaler,* 584 F.2d 240, 247 (8th Cir. 1978) (147.09 grams of cocaine); *United States v.*

15   *Powell,* 564 F.2d 256, 259 (8th Cir. 1977) (50 ounces of heroin); *United States v. Echols,* 477

16   F.2d 37, 40 (8th Cir. 1973) (199.73 grams of cocaine); *United States v. Contreras,* 446 F.2d 940,

17   942 (2d Cir. 1971) (690 grams of cocaine)).

18   However, in cases with amounts under 100 grams, courts have repeatedly held that mere

19   possession is an insufficient basis from which an intent to distribute may be inferred.  *See, e.g.,*

20   *Turner v. United States,* 396 U.S. 398, 422-23 (1970) (14.68 grams of 5% pure cocaine

21   insufficient); *Franklin,* 728 F.2d at 998 (35 grams of  42% pure cocaine insufficient); *Bentley v.*

22   *Cox,* 508 F. Supp. 870, 877 (E.D.Va. 1981) (73 grams of marijuana insufficient); *United States v.*

23   *Owens,* 344 F. Supp. 1355, 1356 (E.D.Wis. 1972) (26 grams of heroin insufficient), *aff'd,* 475

24   _____

25   'did not place petitioner in jeopardy for an 'offense.'"  *Duran,* 227 F.Supp.2d at 1131 (quoting
     *Monge,* 524 U.S. at 729).  "[T]he sentence in *Monge*–double the seven year maximum sentence

26   for using a minor to sell drugs where the offender had previously convicted of a qualifying felony
     –was found to be within the constitutionally permissible range."  *Id.*

F.2d 759 (5th Cir. 1973).  Moreover, the Ninth Circuit has long held that "whether the defendant is addicted to the drug found in his possession is another consideration in determining whether there was sufficient evidence of intent to distribute," given the amount possessed.  *United States v. Ramirez-Rodriguez,* 552 F.2d 883, 885 (9th Cir. 1977) (explaining that, in the absence of either direct evidence of an intent to sell or a large quantity of drugs, an inference of intent to distribute can only be supported if it is based upon other "very unusual" circumstances).

Here, the total amount of narcotics possessed by Mr. Serrano was nowhere near 100 grams. In fact, the parties stipulated that Mr. Serrano merely possessed a total of three grams of crack cocaine.  Mr. Serrano was not seen selling or attempting to sell any of the crack cocaine during the short time that he was in the park.  A search of his person yielded paraphernalia for smoking the crack cocaine himself and no other indicia of sales, such as a significant amount of money, extra packaging, a scale or pay-owe sheets.  No search was done of his residence but the testimony at trial was uncontradicted that no such indicia of sales were present there either. There was no evidence that Mr. Serrano wrapped the crack cocaine in his possession for sale, as opposed to having purchased it that way.  Finally, the jury was not unanimously convinced that Mr. Serrano possessed a firearm, despite the sworn testimony of two San Francisco police officers, likely because their stories were neither believable nor consistent.

Although the Court denied Mr. Serrano's motion for judgment of acquittal under Rule 29 on the issue of intent to distribute, other courts have granted such motions under similar circumstances.  *See, e.g., United States v. Hunt,* 129 F.3d 739, 741-42 (5th Cir. 1997) (reversing conviction for possession of crack cocaine with intent to distribute on the grounds that the evidence was insufficient to support the jury's verdict that the defendant intended to distribute the crack, where the defendant possessed eight grams of crack, a bag of marijuana, a razor blade, cigar wrappings for packaging marijuana and crack "blunts," and a loaded handgun); *United States v. Skipper,* 74 F.3d 608, 611 (5th Cir. 1996) (reversing conviction for possession of 2.89 grams of crack cocaine with intent to distribute due to insufficient evidence of intent, despite

- 5 -

1  presence of straight-edge razor and absence of smoking paraphernalia); *cf. United States v.*

2  *Lopez,* 477 F.3d 1110, 1114 (9th Cir. 2007) ("Where there is 'other evidence of a plan or intent

3  to distribute,' this court has held that possession of as little as four or five grams may establish an

4  intent to distribute cocaine." (footnotes omitted)).

5      Nor does the generalized societal harm of drug trafficking warranted a career offender

6  sentence here.  While it is widely accepted that "[p]ossession, use, and distribution of illegal

7  drugs represent one of the greatest problems affecting the health and welfare of our population,"

8  *Harmelin v. Michigan,* 501 U.S. 957, 1002 (1991) (holding that a sentence of life without parole

9  for "possession of more than 650 grams (over 1.5 pounds of cocaine)" with "a potential yield of

10  between 32,500 and 65,000 doses" did not violate the Eighth Amendment), the potential harm to

11  society as a whole cannot justify disproportionate sentences in individual cases, *Terrebonne,* 624

12  F.2d at 1369 ("The State has again missed the point of the [Eighth Amendment] proportionality

13  doctrine in arguing that in each and every case of drug distribution we must consider the societal

14  harm caused by drug trafficking as a whole without regard to the particular facts under review.").

15      Moreover, the Ninth Circuit has specifically recognized under this Eighth Amendment

16  proportionality analysis that, in weighing any argument by the prosecution that a defendant's

17  incarceration for over twenty years is necessary to mitigate his potential danger to society, the

18  sentencing court must take into account any plea agreement offered to the defense for a lesser

19  sentence.  *See Reyes,* 399 F.3d at 969 n.9 ("Our suspicion that Reyes' twenty-six years to life

20  sentence may be grossly disproportionate to the gravity of his triggering offense and criminal

21  history is also supported by the fact that the State offered Reyes a deal of four years

22  imprisonment in exchange for a guilty plea to the triggering perjury charge. By offering Reyes

23  such a heavily discounted sentence, an inference may properly be raised that the State did not

24  view Reyes as a 'danger to society' and that the State did not feel 'the need to counter his threat

25  with incapacitation.' Andrade, 538 U.S. at 81, 123 S.Ct. 1166 (Souter, J., dissenting).").  Here,

26  the government offered before trial to dismiss entirely the charge of possession with intent to

1   distribute three grams of crack cocaine in Count Three of the indictment if Mr. Serrano would

2   plead guilty to felon firearm possession as charged in Count One and stipulate to a sentence of

3   ten years imprisonment.  *See* Declaration of Daniel P. Blank [hereinafter "Blank Decl."] ¶¶ 2-3 &

4   Exh. A & B.  Thus, the Court should find as a threshold matter that this is one of the "rare cases"

5   in which a comparison of the crime committed and the prospective guideline sentence of 22 to 27

6   years raises "an inference of gross disproportionality." *Davila,* 2006 WL 1867635 at *3 (citing

7   *Harmelin,* 501 U.S. at 1005; *Ewing,* 539 U.S. at 30-31).

8        Finally, Mr. Serrano's two qualifying prior felony convictions, for assault when he was 18

9   years old and possession with intent to distribute four grams of powder cocaine when he was 21

10  years old, do not "destroy" that inference of gross disproportionality.  *Duran,* 227 F.Supp.2d at

11  1131.  Although both convictions meet the requirement of being either "a crime of violence or a

12  controlled substance offense" under U.S.S.G. § 4B1.1, resulting in a guideline range of 262 to

13  327 months (22 to 27 years), they cannot, without violating the Double Jeopardy Clause, serve to

14  aggravate the principal offense of possessing with intent to distribute three grams of crack

15  cocaine from the natural guideline range for that quantity of drugs of 70 to 87 months (6 to 7

16  years) under U.S.S.G. § 2D1.1(c)(10) (as amended May 11, 2007, effective Nov. 1, 2007),

17  because of Mr. Serrano's youth at the time of his qualifying prior convictions and their relatively

18  minor nature.  *Cf. Taylor v. Lewis,* 460 F.3d 1093, 1099-1101 (9th Cir. 2006) (affirming

19  California "Three Strikes" sentence of 25 years to life for possessing 0.036 grams of cocaine

20  where petitioner's criminal history "spanning some 30 years" was "marked by violence and the

21  intentional taking of human life"); *Rios v. Garcia,* 390 F.3d 1082, 1086 (9th Cir. 2004)

22  (affirming California "Three Strikes" sentence of 25 years to life for felony petty theft where

23  petitioner "struggled with the loss prevention officer and tried to avoid apprehension" and had

24  two prior felony convictions for robbery).

25       Having thus found an inference of gross disproportionality, the Court may then proceed to

26  compare the prospective sentence in this case "with sentences in the same and other

1    jurisdictions." *Davila,* 2006 WL 1867635 at *3 (citing *Harmelin,* 501 U.S. at 1005; *cf.*

2    *Ewing,* 539 U.S. at 23). With respect to sentences in the same jurisdiction, as noted above, the

3    U.S. Sentencing Guidelines as amended provide for a natural sentencing range of between 33 and

4    87 months based upon Offense Level 20 for possessing with intent to distribute between three

5    and four grams of crack cocaine. Although those same guidelines provide for a sentence of 262

6    to 327 months for all defendant similarly eligible for the career offender enhancement, that

7    comparison is inapposite. *See Duran,* 227 F.Supp.2d at 1132 ("The fact that petitioner's

8    sentence may be comparable to other sentences imposed under Three Strikes is of no persuasive

9    value in this analysis."). In any event, other defendants in this district eligible for the career

10   offender enhancement have routinely received significantly lower sentences despite committing

11   more aggravated offenses with more serious criminal histories.

12        For example, one recent case with which this Court is already familiar is *United States v.*

13   *Jacqueline Bishop,* CR 06-00288 WHA. Ms. Bishop pleaded guilty to possession with intent to

14   distribute 179 grams of crack cocaine, 1004 grams of powder cocaine, and 157 grams of heroin,

15   and conspiracy to possess with intent to deliver those controlled substances. Like Mr. Serrano,

16   Ms. Bishop qualified as a career offender with an adjusted guideline range of 262 to 327 months

17   (reduced to that range for Ms. Bishop based upon a three-level adjustment for her acceptance of

18   responsibility), due in her case to a lengthy history of narcotics trafficking. In fact, unlike Mr.

19   Serrano, Ms. Bishop actually had four qualifying prior felony convictions for possession of crack

20   cocaine for sale, as well as seven other arrests for the same offense that did not lead to

21   convictions. Nevertheless, because Ms. Bishop was merely a "street level" dealer before getting

22   involved with her co-defendant, the U.S. Probation Office recommended a sentence of 210

23   months (17 years and five months).[3] If such a defendant with four qualifying prior convictions,

24   who commits an offense involving hundreds of grams of crack cocaine, hundreds of grams of

25

26   ───────────────

     [3] The Court further reduced Ms. Bishop's sentence to 168 months imprisonment based
     on additional factors not applicable here.

heroin and over one thousand grams of powder cocaine, warrants such a sentencing reduction in this district, surely Mr. Serrano, with only two qualifying prior convictions, and whose offense involved only three grams of crack cocaine, warrants an even greater sentencing reduction.

Likewise, with respect to sentences in other jurisdictions, the possession for sale of crack cocaine in, for example, the California state courts is punishable by a term of three, four or five years. *See* Cal. H & S Code § 11351.5.  Along these lines, the punishment Mr. Serrano actually received for possession with intent to distribute four grams of powder cocaine pursuant to § 13351 was three years imprisonment. *See* PSR ¶ 29.  Thus, both intrajurisdictional and interjurisdictional comparisons support the inference that a sentence of 22 to 27 years for possessing three grams with intent to distribute would be grossly disproportionate.

Accordingly, in sentencing Mr. Serrano, the Court should not follow the recommended range of the advisory sentencing guidelines since such a sentence would likely violate the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fifth Amendment's Double Jeopardy Clause as grossly disproportionate to his offense of conviction and unjustified simply as a recidivist sentence in light of the nature and circumstances of his qualifying prior convictions.

## II.   22 - 27 YEAR SENTENCE UNWARRANTED UNDER ADVISORY GUIDELINES

In the alternative, even if the Court determines that a sentence of 22 to 27 years in this case would not rise to the level of a constitutional violation, the Court should nevertheless decline to follow the recommended range of the advisory career offender sentencing guideline in sentencing Mr. Serrano.

Freed from the requirement of mandatory sentencing guidelines, district courts are now guided in their sentencing discretion by the remaining statutory enactments of Congress.  As a result of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), the guidelines are now just one of many sources that courts must consult at sentencing.  Instead, the provisions of several statutes must be weighed and considered by courts to determine the minimum sentence necessary to achieve the purposes of sentencing.  Together these statutes

1   require a more balanced and individualized approach to determining a fair and just sentence than

2   was previously permitted under the guidelines.

3       The Supreme Court in *Booker* directs sentencing courts to the remaining provisions of the

4   Sentencing Act, particularly § 3553(a), for guidance in determining a "reasonable" sentence.

5   *Booker,* 543 U.S. at 233-34.  Section 3553(a) mandates that "[t]he court shall impose a sentence

6   sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."

7   18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3551(a) (providing that a defendant "shall be

8   sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth

9   in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in

10  light of all the circumstances of the case").  Those purposes are:

11

12          the need for the sentence imposed -- (A) to reflect the seriousness of the
            offense, to promote respect for the law, and to provide just punishment for the
            offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect

13          the public from further crimes of the defendant; and (D) to provide the
            defendant with needed educational or vocational training, medical care, or

14          other correctional treatment in the most effective manner.

15  18 U.S.C. § 3553(a)(2).

16      In addition to setting forth the purposes for courts to achieve at sentencing, § 3553(a)

17  enumerates several other factors, in addition to the overall purposes of sentencing articulated in

18  § 3553(a)(2), for courts to consider in exercising its sentencing discretion, only one of which is

19  the now-advisory guidelines.  Specifically, § 3553(a) provides that "[t]he court, in determining

20  the particular sentence to be imposed, shall consider" the following:  "the nature and

21  circumstances of the offense and the history and characteristics of the defendant"; "the kinds of

22  sentences available"; "the kinds of sentence and the sentencing range established" by the

23  guidelines and "any pertinent policy statement" issued by the Sentencing Commission; "the need

24  to avoid unwarranted sentence disparities among defendants with similar records who have been

25  found guilty of similar conduct"; and "the need to provide restitution to any victims of the

26  offense."  18 U.S.C.  § 3553(a)(1), (3)-(7).

1    Moreover, Congress has emphasized that, in considering these factors, sentencing courts

2    are obligated to bear in mind that lengthy imprisonment may not be the best way to achieve the

3    statutory goals of sentencing:  "The court, in determining whether to impose a term of

4    imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the

5    term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable,

6    recognizing that imprisonment is not an appropriate means of promoting correction and

7    rehabilitation."  18 U.S.C. § 3582(a).  Thus, courts are required by statute to impose a reasonable

8    sentence, taking into account all of the factors of 18 U.S.C. § 3553(a).  Here, as explained in

9    detail below, the history and background of Mr. Serrano, as well as the circumstances of the

10   current offense, warrant a sentence below the advisory guideline range.

11    Pursuant to the Supreme Court's decision in *Booker,* the Court is still required to take into

12   account the applicable sentencing guideline, including any valid guideline departure, in

13   determining what sentence to impose under 18 U.S.C. § 3553(a).  Here, the PSR calculates that

14   Mr. Serrano qualifies for the "career offender" sentencing enhancement under U.S.S.G.

15   § 4B1.1, resulting in an adjusted advisory guideline range of 262-327 months based upon

16   Offense Level 32 (due to the statutory maximum of the counts of conviction) and Criminal

17   History Category VI (automatically applied under § 4B1.1 regardless of the actual criminal

18   history score). PSR ¶ 23.  However, several reasons exist why the Court should depart from the

19   recommended Guidelines sentence.  Based on the facts underlying the present conviction, the

20   comparatively minor criminal history of Mr. Serrano, the disparity between the natural guidelines

21   sentence for this offense and the career offender guideline, Mr. Serrano's unique personal

22   qualities, and due process considerations, application of the career offender guideline here is

23   unwarranted.

24    The Ninth Circuit has expressly recognized the need for sentencing courts to consider

25   § 3553(a) factors in determining whether to follow the career offender sentencing enhancement

26   under U.S.S.G. § 4B1.1.  For example, in *United States v. Washburn,* 2007 WL 1663526 (9th

1    Cir. June 5, 2007) at *1,[4] the Ninth Circuit vacated the defendant's sentence and remanded for

2    resentencing pursuant to the § 3553(a) factors after the "district court simply recited that the

3    Guidelines are advisory, that Defendant qualified as a career offender, and that, 'in the exercise

4    of its discretion, the court find that departure is not warranted.'"

5        Even under the pre-*Booker* mandatory guidelines, district courts possessed wide latitude to

6    depart down in career offender cases.  *See, e.g., United States v. Reyes*, 8 F.3d 1379, 1381-88

7    (9th Cir. 1993) (affirming 33 month sentence for distributing small quantities of marijuana and

8    cocaine despite 210-262 month career offender guideline range because defendant's conduct

9    "was not at all of the magnitude of seriousness of most career offenders"); *United States v.*

10   *Brown*, 985 F.2d 478, 481-83 (9th Cir. 1993) (trial courts may depart downward in light of, *inter*

11   *alia*, childhood abuse and neglect, nature of prior convictions, and extraordinary acceptance of

12   responsibility); *United States v. Senior*, 935 F.2d 149, 150-51 (8th Cir. 1991) (district court

13   possessed authority to impose 120 month sentence despite 292-365 month guideline range

14   because, *inter alia*, defendant's prior convictions were minor offenses).

15       Now, under the post-*Booker* advisory guidelines, it is even more common for district courts

16   to vary downward when mitigating factors warrant a sentence reduction.  *See, e.g., United States*

17   *v. Fernandez*, 436 F. Supp. 2d 983, 987-91 (E.D. Wis. 2006) (sentence reduced to 114 months

18   from 188-235 month guideline range because, despite seriousness of offense, risk of recidivism,

19   and substance abuse problems, defendant overcame a difficult childhood, demonstrated positive

20   character traits, was not dangerous, and guideline range overstated seriousness of minor drug

21   priors); *United States v. Nielsen*, 427 F. Supp. 2d 872, 875, 884-85 (N.D. Iowa 2006) (sentence

22   reduced to 188 months from 262-327 month guideline range because, *inter alia*, instant offense

23   involved small amounts of drugs, prior convictions were minor, and guideline range exceeded

24   what was necessary to "protect the public, provide deterrence and rehabilitate the defendant");

25   _____

26       [4] This unpublished decision, issued after January 1, 2007, may be cited as persuasive
     authority, even though it is not binding precedent.  *See* Fed. R. App. P. 32.1; *see also* Ninth
     Circuit R. 36-3.

1   *United States v. Person*, 377 F. Supp. 2d 308, 310 (D. Mass. 2005) (sentence reduced to 84

2   months from 262-327 month range because prior offenses were minor, defendant suffered

3   psychological trauma as a child, instant offense was not serious, defendant exhibited high

4   capacity for rehabilitation, and sentence would deter others).

5        Along these lines, the defendant in *United States v. Reyes*, faced a sentence of 210 to 262

6   months under the career offender guidelines.  *See* 8 F.3d at 1382.  The defendant, then 29 years

7   old, was found guilty by a jury of possession with intent to distribute marijuana, possession with

8   intent to distribute cocaine, and for illegal reentry after deportation.  *Id.* at 1381.  The conduct for

9   the offense of conviction consisted of returning selling 2.8 grams of marijuana, and on another

10  occasion possessing 2.7 grams of marijuana and selling 0.14 grams of cocaine to an undercover

11  officer, and then swallowing the rest, after illegally returning to the United States following

12  deportation.  *Id.*   The district court found that Mr. Reyes' criminal history was "minor" as

13  compared to others eligible for the career offender enhancement.  *See id.* at 1384.  According to

14  the PSR, he had been convicted of six other offenses: California state convictions for (1) the use

15  of opiates and (2) possessing for sale of six "baggies" of marijuana; Washington state

16  convictions for (3) attempted theft from a department store and (4) obstructing a public officer;

17  and Oregon state convictions for (5) possession of drugs (including .45 grams of cocaine and

18  0.10 grams of heroin) and (6) possessing and delivering $20-worth of cocaine.  *Id.*  The

19  defendant had also apparently been deported to Mexico on four separate occasions, the last as the

20  result of a felony drug conviction.  *Id.*

21        Despite the recommended career offender sentencing range of 210 to 262 months, the

22  *Reyes* court departed downward by 18 offense levels and imposed a sentence at the low end of

23  the 33 to 41 month range.  *Id.* at 1383.  On appeal, the Ninth Circuit began by reiterating that "it

24  is well established that a downward departure from career offender status is permissible."  *Id.*

25  Specifically, the Ninth Circuit noted that "[u]nder the career offender guidelines a defendant

26  convicted for a fraction of one gram of cocaine is accorded the harshest punishment due an

1    offender trafficking in up to 500 grams." *Id.* at 1384 (citing 21 U.S.C. § 841(b)(1)(C)).  In

2    affirming the district court's downward departure, the Ninth Circuit explained:  "The question we

3    address is not whether the career offender guidelines took into consideration small amounts of

4    drugs, but whether it adequately considered the disproportionate treatment of drug offenders

5    sentenced to the same penalty range for offenses involving drug quantities of exceptionally

6    different orders of magnitude." *Id.* (footnote omitted).

7         Likewise, the Court here should decline to follow the advisory career offender sentencing

8    guideline in this case due to the extraordinarily small amount of drugs possessed by Mr. Serrano,

9    the lack of any direct evidence of intent to sell, and a criminal history that is not as serious as the

10   typical defendant eligible for career offender enhancement.  Mr. Serrano would had to have

11   possessed over 500 grams of crack cocaine–like the defendant in *Reyes,* 8 F.3d at 1384, at least

12   "200 times" as much drugs–to be eligible for the same guideline range of 22 to 27 years, but for

13   the career offender enhancement.  Moreover, several factors in Mr. Serrano's personal history

14   support a variance from the advisory guideline range.

15        First and foremost, Mr. Serrano has a severe drug addiction for which he is greatly in need

16   of treatment.  PSR ¶ 49.  Mr. Serrano's use of alcohol and marijuana began when he was 12 years

17   old, and his use of cocaine and heroin dates back to his teenage years.  *Id.*  Mr. Serrano has never

18   had the benefit of substance abuse treatment, but is eager to participate in such a program during

19   his impending incarceration.  *Id.*  Additionally, growing up first in the Mission District of

20   California and then in the East Bay community of Richmond, Mr. Serrano could not help but be

21   affected by the constant presence of drugs and gangs.  PSR ¶¶ 40, 44.  Subsequently incarcerated

22   from a young age, Mr. Serrano has had little opportunity to learn how to survive without resort to

23   the criminal behavior to which he was exposed.  PSR ¶¶ 49, 50.  Rather than simply being

24   dismissed as having no redeeming value, Mr. Serrano should instead be viewed in this

25   unfortunate context.

26   / / /

- 14 -

1    Finally, under the sentencing factors of § 3553(a), the Court should note recent action by

2    the courts and Congress to address questions of unreasonableness in sentencing cases involving

3    crack cocaine.  For example,  the U.S. Supreme Court granted certiorari and recently heard

4    arguments on whether the disparity in sentencing between cases involving crack cocaine and

5    those involving other drugs such as powder cocaine is unreasonable.  *See Kimbrough v. United*

6    *States,* 127 S. Ct. 2933 (2007); *see also id.* 2007 WL 2847117 (Transcript of Oral Argument Oct.

7    2, 2007).  In addition, as noted above, the U.S. Sentencing Guidelines were amended on May 11,

8    2007, to reduce the offense level applicable to crack cocaine cases effective November 1, 2007.

9    For these reasons, even if the Court determines that a sentence pursuant to the advisory

10   career offender guideline is not constitutionally infirm, the Court should still exercise its

11   discretion under § 3553(a) not to sentence him within that range.  Rather, a sentence within the

12   natural guideline range effective November 1, 2007, of 70 to 87 months would be more

13   reasonable under the statutory sentencing factors in § 3553(a).

14   **III.   SENTENCING FACTS HERE REQUIRE CLEAR AND CONVINCING EVIDENCE**

15   In making any factual findings to determine the proper sentence in this case, the Court

16   should consider the great disparity between Mr. Serrano's natural guideline sentence and the

17   sentence suggested by the career offender guideline.  Without the career offender enhancement,

18   Mr. Serrano qualifies for a advisory sentence range of 70-87 months. With the enhancement, the

19   range is 262-327 months.  The difference is more than three-fold.  Accordingly, the sentence

20   enhancement for being a career offender is the mighty "tail" that wags the natural guidelines

21   sentence "dog."  The disproportionate impact of the career offender sentence enhancement, based

22   on facts requiring only a preponderance of the evidence finding, threatens Mr. Serrano's due

23   process rights.  To counter this threat, this Court should consider requiring a higher standard of

24   proof to find the facts that will increase Mr. Serrano's sentence here, specifically "clear and

25   convincing" evidence.

26   / / /

1    As noted by the Ninth Circuit, "[t]he Supreme Court has recognized that there may be an

2    exception to the general rule that the preponderance standard satisfies due process when a

3    sentencing factor has an extremely disproportionate effect on the sentence relative to the offense

4    of conviction." *United States v. Jordan*, 256 F.3d 922, 927 (9th Cir. 2001) (internal citations

5    omitted) (referring to the United States Supreme Court due process discussion in *McMillan v.*

6    *Pennsylvania*, 477 U.S. 79, 88 (1986)).  Indeed, the Ninth Circuit has recently reaffirmed that

7    "there are certain circumstances in which a clear and convincing standard is appropriate, such as

8    where the enhancement would have 'an extremely disproportionate effect' on the sentence."

9    *United States v. Pike*, 473 F.3d 1053, 1057 (9th Cir. 2007) (quoting *United States v. Hopper*, 177

10   F.3d 824, 832-33 (9th Cir. 1999)).

11        There is no "bright-line" rule in the Ninth Circuit to determine whether an enhancement has

12   such an "extremely disproportionate effect" as to render the sentence unconstitutional.  *Pike*, 473

13   F.3d at 1057.  Rather, courts look to the totality of the circumstances.  *Id.*; *see also Jordan*, 256

14   F.3d at 928.  The *Jordan* court identified six factors that should be considered:

15        (1) whether the enhanced sentence falls within the maximum sentence for the crime
         alleged in the indictment; (2) whether the enhanced sentence negates the presumption
16        of innocence or the burden of proof for the alleged crime; (3) whether the facts
         offered in support of the enhancement create new offenses requiring separate
17        punishment; (4) whether the increase in sentence is based upon the extent of
         conspiracy; (5) whether the increase in number of offense levels is less than or equal
18        to four; and (6) whether the length of the enhanced sentence more than doubles the
         length of the sentence authorized by the initial Guidelines range "in a case where the
19        defendant would otherwise have received a relatively short sentence."

20   *Id.* (internal citation omitted); *Pike*, 473 F.3d at 1057-58.

21        In *United States v. Mezas de Jesus*, 217 F.3d 638, 643-45 (9th Cir. 2000), the Ninth Circuit

22   held that a sentencing enhancement for an uncharged kidnaping had a disproportionate impact on

23   the defendant's sentence, requiring remand so the district court could evaluate the proposed

24   enhancement under a clear and convincing standard.  Applying the six *Jordan* factors, the court

25   wrote:

26        Here, Mezas de Jesus's sentence was enhanced nine-levels on the basis of an
         uncharged kidnaping. As a result, his sentencing range increased from 21-27 months

1

2   to 57-71 months, which exposed him to a 36- to 44-month increase in imprisonment.
Although Mezas de Jesus was sentenced at the low end of the enhanced sentencing range,
3   he went from a "relatively short" sentence of less than two years to nearly five years based
on an offense for which he was never even charged.

4   *Id.* at 643.  The standard has not been applied in relation to a career offender enhancement in any

5   published Ninth Circuit case (although at least six unpublished cases address the issue).

6   However, the court in *United States v. Shumate,* 329 F.3d 1026, 1029 n.3 (9th Cir. 2003),

7   suggested in dicta that the higher standard might apply in a career offender case under the right

8   circumstances.

9        Ultimately, in the present case, with the grossly disproportionate sentence faced by Mr.

10   Serrano, the Court should require the higher standard of proof, not only for Mr. Serrano's

11   predicate convictions but also for any conduct charged against Mr. Serrano that did not result in a

12   conviction.  For example, in this case, the jury did not return a guilty verdict on any of the three

13   counts in the indictment charging that Mr. Serrano possessed a firearm or ammunition.  Mr.

14   Serrano respectfully submits that before the Court may increase Mr. Serrano's sentence based

15   upon any such conduct that did not result in a conviction, either under § 3553(a) or by

16   determining that the advisory career offender guideline is not grossly disproportionate to the

17   offense of conviction, the government must prove those facts by clear and convincing evidence.

18        Along these same lines, Mr. Serrano has a prior conviction from 2005 conviction that

19   includes allegations against others of elder abuse that did not result in any conviction for Mr.

20   Serrano.  PSR ¶ 30.  In that case, Mr. Serrano was discovered in the bathroom of an apartment

21   that had been "taken over" by gang members.  *Id.*  The elderly resident of the apartment appears

22   to have been badly mistreated.  *See id.*  However, there is no indication that Mr. Serrano was

23   involved in any abusive conduct toward the victim.  *Id.*  Rather, the evidence merely indicates he

24   had gone to the apartment to buy and use drugs.  *See id.*  He was found sitting in the bathroom of

25   the apartment in the proximity of drugs, drug paraphernalia, and a weapon.  *Id.*  Accordingly, the

26   / / /

1   only offense of conviction for Mr. Serrano as a result of that incident was felon firearm

2   possession with a misdemeanor gang enhancement.  *See id.*

3       The defense respectfully objects to the use of any of this uncharged, inflammatory conduct

4   as a factor in determining Mr. Serrano's sentence.  If the Court does choose to consider this

5   conduct, however, it must first apply a clear and convincing evidence standard of proof.

6   **CONCLUSION**

7       For the aforementioned reasons, the Court should sentence Mr. Serrano to the natural

8   guideline range of between 70 and 87 months imprisonment.

9   Dated: October 23, 2007

10

11       Respectfully submitted,

12       BARRY J. PORTMAN
    Federal Public Defender

13         /S/

14

15       DANIEL P. BLANK
    Assistant Federal Public Defender

16

17

18

19

20

21

22

23

24

25

26